UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 01 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

THANH VIET CAO, AKA Jeremy Cao,

        Defendant - Appellant.

No. 11-50200

D.C. No. 3:10-cr-02217-LAB-1
U.S. District Court for Southern
California, San Diego

**MANDATE**

    The judgment of this Court, entered May 31, 2013, takes effect this date.

    This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

                                              FOR THE COURT:
                                              Molly C. Dwyer
                                              Clerk of Court

                                              Jessica F. Flores
                                              Deputy Clerk

FILED

**NOT FOR PUBLICATION**

MAY 31 2013

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-50200 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-02217-LAB-1 |
| v. | MEMORANDUM[*] |
| THANH VIET CAO, AKA Jeremy Cao | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted March 8, 2013
Pasadena, California

Before: WARDLAW and GOULD, Circuit Judges, and WOLF, Senior District Judge.[**]

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Mark L. Wolf, Senior District Judge for the U.S. District Court for the District of Massachusetts, sitting by designation.

Thanh Viet "Jeremy" Cao ("Cao") appeals his conviction on one count of conspiracy to commit wire fraud, and three counts of wire fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 2, 1341, 1343, and 1349. He also appeals his sentence of 360 months in custody. We have jurisdiction under 28 U.S.C. § 1291. We affirm Cao's conviction and sentence.

The district court did not abuse its discretion by denying Cao's motion to recuse all of the judges of the United States District Court for the Southern District of California. Where a litigant threatens a judge, "'perhaps . . . the most important'" aspect of the recusal inquiry under 28 U.S.C. § 455(a) is "the perceived purpose of the threat." *United States v. Spangle*, 626 F.3d 488, 496 (9th Cir. 2010) (quoting *United States v. Holland*, 519 F.3d 909, 915 (9th Cir. 2008)). Disqualification is not necessary or appropriate where the purpose of the threat is to "force recusal and manipulate the judicial system," *Holland*, 519 F.3d at 915, rather than "actual malice," *Spangle*, 626 F.3d at 496. In this case, after the investigation into Cao's activities had begun, but before he was indicted, Cao threatened to file, and filed, liens against two judges, not including the district judge who presided in his case, and against several prosecutors and other government employees as well. The liens that Cao filed were reasonably regarded as efforts to prompt recusal and manipulate the judicial system. *See Holland*, 519

F.3d at 915–17.

Moreover, the presiding district judge learned about the liens filed against two of his colleagues in the course of the prosecution of Cao. Where, as here, the information that allegedly requires disqualification was received by the judge in the course of the proceedings at issue, disqualification is appropriate only if the judge manifests opinions that "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). This is not such a case.

The district court also did not abuse its discretion by denying Cao's motion to recuse the entire United States Attorney's Office for the Southern District of California. "District judges have 'substantial latitude' in deciding whether counsel must be disqualified" in a criminal case. *United States v. Frega*, 179 F.3d 793, 799 (9th Cir. 1999) (quoting *United States v. Stites*, 56 F.3d 1020, 1024 (9th Cir. 1995)). Disqualification of a single prosecutor has been ordered in limited circumstances, such as when the prosecutor would be a witness at trial, *see United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985), or has an actual conflict of interests, *see Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 809 (1987) (holding "that counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that

3

order"). Such circumstances are not present here. "There is no authority which would allow a defendant to disqualify a government attorney by merely alleging potential civil litigation." *United States v. Wencke*, 604 F.2d 607, 611 (9th Cir. 1979) (per curiam). It necessarily follows that the disqualification of the entire United States Attorney's office was not required. *Cf. United States v. Lorenzo*, 995 F.2d 1448, 1452–53 (9th Cir. 1993).

The district court's decisions to admit certain evidence do not justify a reversal of Cao's conviction. At trial, Cao objected to the admission of some, but not all, of the now disputed evidence. "We review a district court's evidentiary rulings for an abuse of discretion and its interpretation of the Federal Rules of Evidence *de novo*." *United States v. Waters*, 627 F.3d 345, 351–52 (9th Cir. 2010). "The *de novo* standard applies when issues of law predominate in the district court's evidentiary analysis, and the abuse-of-discretion standard applies when the inquiry is essentially factual." *United States v. Mateo-Mendez*, 215 F.3d 1039, 1042 (9th Cir. 2000) (internal quotation marks omitted). Where an objection was erroneously overruled, "we reverse only if the error was not harmless." *United States v. Derington*, 229 F.3d 1243, 1247 (9th Cir. 2000). Where a defendant did not object to the challenged evidence at trial, "we review the admission of this evidence for plain error." *United States v. Reyes-Bosque*, 596 F.3d 1017, 1032 (9th

Cir. 2010). Most of the evidence that defendant challenges was properly admitted by the district court.[1] In any event, the admission of any evidence that might have been inadmissible at most constituted harmless error. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005).

The district court's denial of Cao's motion for acquittal under Federal Rule of Criminal Procedure 29 was not erroneous. Viewing the evidence concerning the use of interstate wires in furtherance of the alleged scheme to defraud "in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

"Where one does an act with knowledge that the use of the [wires] will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the [wires] to be

---

[1] There was a proper basis for the district court to admit some evidence conditionally. The court did not make final rulings on the evidence conditionally admitted. However, the court was not required to revisit *sua sponte* its rulings to admit evidence conditionally. Rather, the burden was on defendant to move to strike the conditionally admitted evidence. *See Huddleston v. United States*, 485 U.S. 681, 690 n.7 (1988); *Sacramento Suburban Fruit Lands Co. v. Miller*, 36 F.2d 922, 922 (9th Cir. 1929). Cao did not do so.

used." *Pereira v. United States*, 347 U.S. 1, 8–9 (1954).[2] A rational juror could have found that Cao knew or reasonably could have foreseen that his use of a credit card to pay for the investor event in December 2006 would cause interstate wires to be used in the ordinary course of business to obtain payment for the event.

In addition, a rational juror could have found that the use of interstate wires was in furtherance of Cao's scheme. To be in furtherance of a scheme, the charged wire transmission "need not be an essential element of the scheme. It is sufficient for the [use of interstate wires] to be incident to an essential part of the scheme, or a step in [the] plot." *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989) (second alteration in original) (citations omitted) (internal quotation marks omitted) (case involving mail fraud); *see also United States v. Garlick*, 240 F.3d 789, 795 (9th Cir. 2001) (quoting *Schmuck*, 489 U.S. at 711) (case involving wire fraud). The wire fraud statute proscribes using the wires to promote a scheme by lulling victims into believing "that all is well, discouraging [them] from investigating and uncovering the fraud." *United States v. Jones*, 712 F.2d 1316, 1321 (9th Cir. 1983); *see also United States v. Maze*, 414 U.S. 395, 403 (1974). A rational juror could have concluded that sustaining the appearance that he was an

---

[2] *Pereira* is a case involving mail fraud. However, "[i]t is well settled that cases construing the mail fraud and wire fraud statutes are applicable to either." *United States v. Shipsey*, 363 F.3d 962, 971 n.10 (9th Cir. 2004).

extremely successful investor was essential to Cao's Ponzi scheme, which depended, in part, on impressing existing investors so they would not withdraw their funds. *Cf. Schmuck*, 489 U.S. at 711–12. It would have been reasonable for such a juror to find that Cao hosted the December 2006 event at an opulent hotel to impress his investors, two of whom testified that the December 2006 event contributed to their confidence in their investments with Cao.

   Cao's use of his credit card to pay for the December 2006 investor event caused interstate wires to be used in a manner that reasonably could have been viewed as incident to Cao's efforts to instill confidence in his investors. A rational juror could have concluded that the December 2006 investor event depended, at least in part, on Cao using his credit card to pay both the deposit required before the event and the balance due after it. This distinguishes the instant case from those on which Cao primarily relies, such as *Maze*, 414 U.S. at 402, *Parr v. United States*, 363 U.S. 370, 393 (1960), and *Kann v. United States*, 323 U.S. 88, 94 (1944). In contrast to those cases, Cao caused the wires to be used before his scheme had succeeded in obtaining all of the fruits of the fraud, and it was important to the success of his continuing scheme that interstate wires be used to provide payment for the December 2006 event.

   That Cao was convicted on the wire fraud charges relating to the December

7

2006 investor event and acquitted on the charges relating to the February 2007 investor event does not mean that the jury returned an inconsistent verdict. The evidence was different for each event. The jury heard testimony from witnesses who attended the December 2006 event, but did not hear testimony from any witness who attended the February 2007 event. Therefore, there was a rational basis for the distinction in the jury's decisions. Moreover, the court's review of the sufficiency of the evidence regarding the December 2006 event "should be independent of the jury's determination that evidence on another count was insufficient," and an inconsistent verdict alone would not be a basis for reversal. *United States v. Powell*, 469 U.S. 57, 67–69 (1984).

In determining Cao's sentence, the district court did not impermissibly punish him for asserting his Fifth Amendment right to remain silent about the location of money he had received from defrauded investors. It would have been unlawful for the district court to draw any adverse inference if Cao had exercised that right. *See Mitchell v. United States*, 526 U.S. 314, 330 (1999); *United States v. Safirstein*, 827 F.2d 1380, 1388–89 (9th Cir. 1987). However, if at sentencing a defendant waives his Fifth Amendment right to remain silent, the district court may take his refusal to provide relevant information into account in determining the sentence, in part because his "refusal to cooperate [may] protect[] his former

8

partners in crime, thereby preserving his ability to resume criminal activities upon release." *Roberts v. United States*, 445 U.S. 552, 558 (1980). This is such a case. After consulting counsel, Cao knowingly and voluntarily waived his Fifth Amendment right to remain silent and made certain statements. Therefore, the district court had the discretion to consider his failure to provide information about the location of the missing money in determining Cao's sentence. *See id.* at 557–59.

The district court also did not abuse its discretion when it chose not to depart from the Guidelines after considering defendant's policy argument that the white-collar fraud Guidelines lack a proper empirical foundation. *See United States v. Henderson*, 649 F.3d 955, 964 (9th Cir. 2011).

Nor did the district court abuse its discretion by imposing a substantively unreasonable sentence. The district judge properly calculated the Guideline range and considered the 18 U.S.C. § 3553(a) factors, including the information presented by the parties regarding sentences in other similar cases. *See United States v. Blinkinsop*, 606 F.3d 1110, 1116 (9th Cir. 2010) ("[w]hen a district judge has considered the § 3553(a) factors and the totality of the circumstances supports the sentence, we have held that the sentence is substantively reasonable").

In view of the foregoing, we affirm Cao's conviction and sentence.

**AFFIRMED.**

10