# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>    v.<br><br>THANH VIET CAO,<br><br>                              Defendant. | Case No. 10-cr-02217-BAS-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (ECF No. 117)** |

## I.    INTRODUCTION

Defendant Thanh Viet Cao moves to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)—compassionate release—claiming that he received an "unusually long sentence," he suffered an overly harsh experience during the COVID-19 pandemic, he has been rehabilitated, and he has plans upon his release. (ECF No. 117.) The Government opposes. (ECF No. 128.) The Court agrees with the Government that Defendant fails to demonstrate that extraordinary and compelling reasons warrant his release or that the factors under 18 U.S.C. § 3553(a) support his release. Hence, the Court

10cr2217

**DENIES** Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c). (ECF No. 117.)

## II.    BACKGROUND

Mr. Cao, a registered securities broker, masterminded multiple investment schemes for a period of years, defrauding over 170 victims out of ten to twelve million dollars. (Presentence Report ("PSR").)  He used some of the money to buy luxury goods, including a $200,000 Bentley, and some of the money was wired to offshore accounts through Hong Kong. (*Id.*) A jury convicted Mr. Cao of four counts of mail or wire fraud and found him not guilty of the three remaining counts of wire fraud. (ECF No. 61.)

After the SEC and the U.S. Attorney's Office began investigating Mr. Cao, and after his Bentley was seized, he lashed out against federal and state judges, agents, and prosecutors by filing a series of false liens. This conduct was the subject of a separate indictment. (*Id.*)

Mr. Cao had a prior conviction for threatening and attempting extortion of a business partner. In that case, Mr. Cao had not only threatened his partner, but also his partner's wife and child, describing an incident in which a baby had been kidnapped, chopped up into pieces, and the man's wife killed in front of him. (*Id.*)

Judge Burns calculated Mr. Cao's base offense level to be 41, his criminal history category to be a II, and thus his guideline range to be 360 months to life. (Sentencing Tr., ECF No. 91.) Judge Burns sentenced Mr. Cao to 240 months on Count One; 120 months on Count Two—to be served consecutively; and 120 months on Counts Three and Four—to be served concurrently with the other counts, for a total of 360 months in custody, which was the low end of the guideline range. (ECF No. 81.)

At sentencing, Judge Burns noted several aggravating circumstances beyond just the amount of money stolen, including "a pattern of belligerence and obstruction," the fact that the fraud "happened over a long period of time," and the fact that a large amount of money was still missing—with Mr. Cao refusing to be forthcoming about where this money was. (Sentencing Tr.) In addition, Judge Burns noted that the fraud had "real-life consequences.

10cr2217

People losing their houses, going into bankruptcy. People who can no longer pay to send their kids to college." (*Id.* 41:24–45:14.) And Judge Burns was concerned about general deterrence for white collar criminals. (*Id.*)

The calculation of Mr. Cao's guideline range, with a base offense level of 41 and a criminal history category of II, has not changed since Mr. Cao was sentenced 15 years ago.

Mr. Cao now moves *pro se* for compassionate release, arguing "extraordinary and compelling reasons" militate in favor of his release. (Mot., ECF No. 117.) The Court referred the motion to Federal Defenders for possible appointment of counsel (ECF No. 119), but Federal Defenders filed a status report, concluding "the Court can decide [the Motion] on the existing record without further assistance of counsel" (ECF No. 126). The Government opposes. (ECF No. 128.)

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, modify or reduce a defendant's term of imprisonment, but only after he has exhausted his administrative remedies. "The district court must enforce the administrative exhaustion requirement" when it is properly invoked by the Government. *United States v. Keller*, 2 F.4th 1278, 1280 (9th Cir. 2021).

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition with the Warden seeking release, which is denied by the Warden, and the petitioner proceeds to continue to fully exhaust his administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse, and because of the Warden's failure to act, the petitioner may proceed without fully exhausting his administrative remedies. 18 U.S.C. § 3582(c)(1)(A).

Mr. Cao presents evidence that he sent a request to the Warden of the facility at FCI Lompoc, where he is being held. (Mot. Ex. A.) More than 30 days have lapsed without a response from the Warden. Therefore, Mr. Cao has exhausted his administrative remedies.

10cr2217

**B.    Extraordinary and Compelling Reasons for Release**

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020). Because "compassionate release derogates from the principle of finality, it is a narrow remedy . . . and the court's disposition of a compassionate release motion is discretionary, not mandatory." *United States v. Wright*, 46 F.4th 938, 944–45 (9th Cir. 2022).

"The term 'extraordinary' means 'most unusual,' 'far from common,' or 'having little or no precedent.'" *Rutherford v. United States*, 146 S. Ct. 1320, 1330 (2026) (citing Webster's Third New International Dictionary 807 (1976)). "'Compelling' . . . means 'tending to convince or convert for or as if by forcefulness of evidence.'" *Id.* "While the terms 'extraordinary' and 'compelling' leave room for judgment, they are not so flexible as to encompass any consideration." *Id.* at 1332. "This gatekeeping requirement [of finding extraordinary and compelling reasons] is not . . . a free-for-all. It is a distinct analytical step that imposes independent and ascertainable limits on access to compassionate release." *Id.* at 1333. Generally, compassionate release is reserved for an inmate's personal circumstances—notably the inmate's medical condition, age, or family circumstances. *Id.* at 1330.

**1.    Unusually Long Sentence**

Mr. Cao argues first that his sentence should be reduced because it was "unusually long," and he cites to various similar fraud defendants who received lesser sentences. (Mot.) Admittedly, the Sentencing Commission states that compassionate release may be appropriate "[i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment." U.S.S.G. § 1B1.13(b)(6). However, this possibility

10cr2217

applies only when there is a change in the law, and "only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion was filed." *Id.* Mr. Cao points to no change in the law that would have resulted in a lesser sentence today. In fact, the calculation of his guideline range would result in the exact same sentencing guideline range today as the calculation did fifteen years ago.

Additionally, Mr. Cao argues that the judge sentenced him to a disproportionately long sentence (Mot.), but that is not an appropriate ground for compassionate release. *See Fernandez v. United States*, 146 S. Ct. 1292, 1303 (2026) ("The name for § 3582(c)(1)(A)—'Compassionate Release'—highlights its focus on granting mercy rather than righting legal wrongs."). Hence, the simple fact that Mr. Cao received an unusually long sentence is not a sufficient ground to demonstrate "extraordinary and compelling reasons" for release under Section 3582(c)(1)(A).

### 2.    Overly Harsh Experience During COVID-19

Mr. Cao complains that during COVID-19, he faced harsh conditions, including limited visitation, reduced recreation, and intense cell lockdowns. (Mot.) Recognizing, however, that these generally harsh conditions are unlikely to constitute extraordinary or compelling reasons that justify his release, Mr. Cao details his "unique circumstance" because of "the unexpected and unnecessary freezing of his inmate trust fund account" during this period. (ECF No. 117.)  However, as the Government points out, the Government is allowed to encumber trust accounts to the full amount of court-ordered restitution, which is more than $12 million here. *See* 18 U.S.C. § 3613(c).

Regardless, the freezing of Mr. Cao's inmate trust account was neither extraordinary nor compelling within the meaning of Section 3582(c)(1)(A). The fact that Mr. Cao did not have access to his inmate trust fund was not unusual. Mr. Cao further claims limitations on his trust account made it more difficult for him to purchase hygiene items and medications that would have eased his COVID-19 symptoms. However, Mr. Cao does not allege any medical conditions that made his exposure to COVID-19 dangerous, and he appears to be

10cr2217

doing fine now. Thus, his time without access to his trust account is also not a compelling justification for a reduction in his sentence.

### 3.    Rehabilitation and Plans for Release

Finally, Mr. Cao claims he has been rehabilitated and has a plan for his release. (Mot.) As a preliminary matter, Mr. Cao's time in custody has not been discipline-free. (*See* ECF No. 128, Ex. 2.) In addition, a defendant's rehabilitation and plans for release are only relevant to the analysis if the defendant demonstrates other factors showing extraordinary and compelling reasons for release. *See* U.S.S.G. § 1B1.13(d) (noting rehabilitation of the defendant, by itself, is not an extraordinary and compelling reason). Because Mr. Cao fails to demonstrate any other ground that constitutes extraordinary or compelling reasons for his release, this argument alone is insufficient.

### C.    Section 3553 Factors

Additionally, the Court finds the factors listed in 18 U.S.C. § 3553(a) do not support Mr. Cao's release. His offense was a particularly egregious one with many traumatized victims. He continued his fraud over several years, resulting in millions of dollars in losses. Much of this money is still missing and unavailable to pay back the victims because Mr. Cao has refused to be forthcoming about where it went. He resisted all efforts to stop his conduct.

Release would not reflect the seriousness of Mr. Cao's offense, nor his history of troubling behavior. Release would not provide just punishment for his offense, nor promote respect for the law. At this point, the Court is concerned about the protection of the public from Mr. Cao's future offenses. For all of these reasons, the Court finds, even if Mr. Cao had demonstrated extraordinary and compelling reasons for release, the factors listed under Section 3553(a) do not support release.

//

//

//

//

10cr2217

## IV.    CONCLUSION

For all the reasons stated above, the Court **DENIES** Defendant's Motion for Compassionate Release. (ECF No. 117.)

**IT IS SO ORDERED.**

**DATED: July 13, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

- 7 -

10cr2217